1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PAMELA ROSSER-MELIN,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. 1:15-CV-03108-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF No. 14, 18.  Attorney D. James Tree represents Pamela Rosser-Melin (Plaintiff); Special Assistant United States Attorney Richard M. Rodriguez represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional

proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on October 31, 2011, alleging disability since September 15, 2011, due to diabetes, asthma, emotional problems, diverticulitis, and a left knee injury. Tr. 186-196, 213. The applications were denied initially and upon reconsideration. Tr. 108-114, 120-124. Administrative Law Judge (ALJ) Dan R. Hyatt held a hearing on July 25, 2013, at which Plaintiff, represented by counsel, and vocational expert, Richard Hincks, testified. Tr. 36-67. The ALJ issued an unfavorable decision on October 25, 2013. Tr. 17-31. The Appeals Council denied review on April 27, 2015. Tr. 1-4. The ALJ's October 25, 2013, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on June 29, 2015. ECF No. 1, 3.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 47 years old at the alleged date of onset. Tr. 186. Plaintiff did not complete her high school education, with the last grade complete being the eighth or ninth grade. Tr. 214, 388. She last worked in 2009 as a home healthcare provider. Tr. 213-214. Plaintiff reported that she stopped working in 2009 because her employer moved away, but that her conditions became severe enough to keep her from working as of September 15, 2011. Tr. 213.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo,

ORDER GRANTING PLAINTIFF'S MOTION . . . - 2

deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of*

*Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### ADMINISTRATIVE DECISION

On October 25, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 15, 2011, the alleged date of onset.  Tr. 19.

At step two, the ALJ determined Plaintiff had the following severe impairments:  obesity, gastroesophageal reflux disease (GERD), anxiety, bipolar disorder, ulcers, and a hernia.  Tr. 19.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 21.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform sedentary work, "except she is limited to performing work that involves no public contact and no more than occasional interaction with coworkers."  Tr. 22.  The ALJ identified her past relevant work as home health aide and nurse's assistant.  Tr. 29.  The ALJ determined that Plaintiff was not able to perform this past relevant work.  *Id.*

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of electronics worker, electronics assembler, and production assembler.  Tr. 29-30.  The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged date of onset, September 15, 2011, through the date of the ALJ's decision, October 25, 2013.  Tr. 30.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to make a proper step two determination; (2) failing to properly weigh and consider Plaintiff's testimony; and (3) failing to properly weigh medical source statements.

**DISCUSSION**

**A.    Step Two**

Plaintiff asserts that the ALJ erred by not finding Plaintiff's asthma/chronic obstructive pulmonary disease (COPD) and knee impairment as severe. ECF No. 14 at 4-8.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotation marks omitted). A claimant's own statement of symptoms alone will not suffice. *See* 20 C.F.R. §§ 404.1508, 416.908.

**1.    Asthma/COPD**

The ALJ found that Plaintiff's breathing impairment was non-severe, stating "[a]lthough the claimant has been diagnosed with asthma, it is controlled with inhalers and she continues to smoke marijuana." Tr. 20.

Plaintiff had been diagnosed with asthma and COPD. Tr. 459. On September 15, 2011, a Spirometry showed FEV1 of 1.1 L pre-bronchodilator, or

41% of predicted, and a FEV1 of 1.8 L post-bronchodilator, or 67% of predicted.[1] Tr. 527.  On February 16, 2012, a Spirometry showed FEV1 of 1.4 L pre-bronchodilator, of 54% of predicted, and a FEV1 of 1.9 post-bronchodilator, or 73% of predicted.  Tr. 528.  A listing 3.02 level impairment for a person of Plaintiff's height is a FEV1 of 1.15 L.

Plaintiff argues that her impairment meets listing 3.02 or 3.03.  ECF No. 14 at 5-6.  Plaintiff's asthma/COPD does not meet listing 3.02 with the Spirometry reports,[2] and the record does not show that Plaintiff had asthma attacks that required physician intervention at the rate of every two months or at least six times a year under listing 3.03.  However, just because Plaintiff's impairment does not meet a listing, does not mean that it is not severe.

Therefore, the ALJ's determination that Plaintiff's asthma/COPD is non-severe is not supported by the record.  Defendant argues that any error from the step two determination is harmless error because the ALJ considered all Plaintiff's impairments, both severe and non-severe, in forming the residual functional capacity determination.  ECF No. 18 at 9.  However, since the case is being remanded for a new credibility determination, see below, that ALJ is instructed to readdress Plaintiff's asthma/COPD at steps two through five.

_____

[1] A Spirometry is an objective breathing test used to evaluate pulmonary ventilation.  The FEV1 score represents the volume of air that can be exhaled by a patient with maximum effort during the first second.  1 DAVID A. MORTON, III, M.D., SOCIAL SECURITY DISABILITY MEDICAL TESTS 203-204 (1st ed. 2015).  The FEV1 is one of the Spirometry scores relied upon when determining if a claimant meets or equals Listing 3.02, Chronic pulmonary insufficiency and Listing 3.03, Asthma.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.

[2] The FEV1 score of 1.15 L must be on the post-bronchodilator portion of the test.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 3.00(E).

## 2.    Left Knee

The ALJ determined that Plaintiff's left knee impairment was non-severe based on a longitudinal record, including a normal MRI in October 2011, a normal range of motion and referral to physical therapy in December 2011, a discharge from physical therapy for a failure to attend, and a diagnostic arthroscopy in March 2013.  Tr. 20.  Here, unlike with the asthma/COPD, the ALJ discussed the medical evidence and provided some rationale for finding the left knee impairment non-severe.  However, since the case is being remanded for a new credibility determination, the ALJ is further instructed to reconsider Plaintiff's left knee impairment at step two.

## B.    Credibility

Plaintiff contests the ALJ's adverse credibility determination in this case.  ECF No. 14 at 8-14.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen*, 80 F.3d at 1281; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff less than fully credible concerning the intensity, persistence, and limiting effects of her symptoms.  Tr. 23.  The ALJ reasoned that Plaintiff was less than fully credible because (1) Plaintiff's medical treatment did not support her allegations of disability, and (2) the gap in Plaintiff's treatment combined with "her apparent disinterest in obtaining refill or alternative medications is strong persuasive evidence that her impairments are not particularly limiting."  Tr. 23-25.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 7

**1.      Contrary to the medical evidence**

The ALJ's first reason for finding Plaintiff less than fully credible, that Plaintiff's symptoms are not supported by medical evidence, is not a specific, clear, and convincing reason to undermine Plaintiff's credibility.

Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

In his decision, the ALJ gave a very general summary of Plaintiff's testimony, stated that the treatment records did not support Plaintiff's allegations of disability, and then proceeded to summarize the treatment notes. Tr. 23, 25. The ALJ failed to discuss specify what testimony was not credible and what evidence undermined the claimant's complaints as required by *Lester*. Therefore, this reason did not fulfill the specific, clear and convincing standard and is in error.

**2.      Lack of treatment**

The ALJ's second reason for finding Plaintiff less than fully credible, that the gap in Plaintiff's treatment combined with "her apparent disinterest in obtaining refill or alternative medications is strong persuasive evidence that her impairments are not particularly limiting," is not a specific, clear and convincing reason.

In assessing a claimant's credibility, an ALJ can rely upon "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284); *see Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (an "unexplained, or inadequately explained, failure to seek treatment may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies"). A claimant's statements may be deemed less credible "if the level or frequency of treatment is inconsistent with the level of complaints, or if the

medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." S.S.R. 96-7p.

However, a claimant's failure to follow a course of treatment may be excused if the claimant cannot afford the treatment. Gamble v. Chater, 68 F.3d 319, 321-322 (9th Cir. 1995) ("Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." The Ninth Circuit held that, "[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." (citation omitted)).

To support his finding, the ALJ referenced the January 16, 2013, clinic note by Rebecca Nelson, ARNP. Tr. 24. In the clinic note, Nurse Nelson commented that Plaintiff was last seen on October 30, 2012, and further stated the following:

> She has been out of albuterol for nebulizer use for over a month and has not felt like coming outside to go to the clinic to address these issues. She has also been out of omeprazole for a while because her insurance has been refusing to fill it without prior authorization. When she stopped taking it, she noticed an increase in gastric symptoms but has not taken anything over the counter for that.

Tr. 460. The treatment gap the ALJ highlights is less than three months, October 30, 2012, to January 16, 2013. The ALJ states that Plaintiff had gone without her medications for "multiple months." Tr. 24. This is inaccurate. Plaintiff had been without her nebulizer for over a month, not multiple months, and she had been without her omeprazole for "a while" due to problems with her insurance. Tr. 460. At the hearing, Plaintiff testified to difficulties affording aspirin. Tr. 49. If Plaintiff was unable to afford the over the counter aspirin, she could not afford over the counter GERD medication. As for the lack of motivation to refill her albuterol medication, the ALJ recognized Plaintiff's anxiety and bipolar disorder as severe impairments, and Plaintiff testified to not leaving her house when faced with stressful situations. Tr. 19, 56-57.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

Here, the ALJ failed to consider if Plaintiff's reason for lack of treatment or failure to refill medications were for good reasons. Therefore, the ALJ errored in his conclusion that Plaintiff's treatment gap and failure to fulfill prescriptions supported the conclusion that Plaintiff was less than fully credible.

Defendant asserts that the ALJ also found Plaintiff less than fully credible due to evidence of secondary gain. ECF No. 18 at 15-16. In the decision, the ALJ did note that Plaintiff admitted to stalling her divorce so that she could receive her spouse's Social Security after they were married for ten years. Tr. 25. However, the ALJ did not cite this as a reason for rejecting Plaintiff's testimony. Even if the ALJ had, it would not have qualified as a specific, clear and convincing reason. First, the only way to qualify for divorced spousal benefits is to be married to the ex-spouse for at least ten years. 20 C.F.R. § 404.331(a)(2). Therefore, waiting out the ten years is common advice given to spouses contemplating divorce in a marriage that has lasted less than ten years.[3] Second, the mere suggestion of secondary gain is a weak reason to reject a Plaintiff's credibility. *Burrell v. Colvin*, 775 F.3d 1133, 1139-1140 (9th Cir. 2014). Here, the ALJ did not determine that Plaintiff's comment exhibited secondary gain, nor did he determine it compromised her credibility. Tr. 25. Therefore, this reason argued by Defendant falls short of the specific, clear and convincing standard.

The ALJ failed to provide legally sufficient reasons to reject Plaintiff's credibility. Therefore, the case is to be remanded for the ALJ to readdress

---

[3]*See, e.g.,* Trish Hodny, *Divorce and "Spousal" Social Security Benefits,* 20 J. Contemp. Legal Issues 87 (2012) (asserting that "the family lawyer's responsibility to his or her client extends beyond the matters immediately at hand-- the distribution of property, child custody and support, spousal support--to matters like social security that typically will not take effect until many years after the divorce").

ORDER GRANTING PLAINTIFF'S MOTION . . . - 10

Plaintiff's credibility.

**C.    Evaluation of Medical Evidence**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by Jan Kouzes, Ed.D., Kari Heistand, M.D., Mona Morgan, LMHC, and Jessica Web, ARNP.  ECF No. 14 at 14-20.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830.  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn*, 495 F.3d at 631.  The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician.  *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons.  *Lester*, 81 F.2d at 830.  When an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the examining physician.  *Id*. at 830-831.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ is required to do more than offer his

conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

### 1.    Jan Kouzes, Ed.D.

Dr. Kouzes evaluated Plaintiff on July 18, 2012, and diagnosed her with bipolar disorder, alcohol dependence, and cannabis abuse.  Tr. 388-392.  She opined that Plaintiff had a severe[4] limitation in the abilities to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances without special supervision, to communicate and perform effectively in a work setting, to complete a normal work day and work week without interruptions from psychologically based symptoms, and to maintain appropriate behavior in a work setting.  Tr. 390.  She opined Plaintiff had a marked[5] limitation in the abilities to understand, remember, and persist in tasks by following detailed instructions, to perform routine tasks without special supervision, to adapt to changes in a routine work setting, to be aware of normal hazards and take appropriate precautions, and to set realistic goals and plan independently.  *Id*.  Additionally, Dr. Kouzes opined that Plaintiff had a moderate[6] limitation in the abilities to understand, remember, and persist in tasks by following very short and simple instructions, to learn new tasks, to make simple work-related decisions, and to ask simple questions or request assistance.  *Id*.

The ALJ gave "partial weight" to Dr. Kouzes' opinion because Plaintiff's

---

[4]"'Severe' means the inability to perform the particular activity in regular competitive employment or outside of a sheltered workshop."  Tr. 390.

[5]"'Marked' means a very significant limitation on the ability to perform one or more basic work activity."  Tr. 390.

[6]"'Moderate' means there are significant limits on the ability to perform one or more basic work activity."  Tr. 390.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 12

treatment records did not support the finding that she had marked or severe functional limitations caused by a mental impairment. Tr. 27. The ALJ stated that the treatment records "show she reported obtaining benefit from her medications and that she objectively showed improvement after completing her inpatient substance treatment program." Tr. 27. However, the only support the ALJ provided for his finding that Plaintiff had expressed improvement with medication use was the medication management note from Dr. Heistand dated October 10, 2012, stating she had decreased depression, decreased anxiety, and a stable mood. Tr. 644. But the records from Dr. Heistand's facility, Central Washington Comprehensive Mental Health, when read in totality shows that this stability and decreased symptoms was not a maintained status for Plaintiff even when taking medication:  On October 18, 2012, Plaintiff was "over emotionally, tearful, comical, laughing and serious," Tr. 630; on October 23, 2012, Plaintiff's counselor stated "Pam is really delusional about life at times," Tr. 625; and the same day, her group therapist stated "Pam gets really excited about some things and then is in denial about other things," Tr. 623. Plaintiff's providers from this same facility have also provided opinions, which included severe and marked limitations. Tr. 360-362, 690-693. Additionally, nowhere in the record did the ALJ cite to this "objective improvement." He did note that in August of 2012, a counseling note described Plaintiff as "smiling and enthusiastic when sharing about her treatment program," and "excited" after her aftercare. Tr. 25. However, the ALJ failed to state how excitement surrounding sobriety was inconsistent with Dr. Kouzes' opinion that Plaintiff had severe limitations that were not caused by alcohol or drug use and that these severe limitations would persist following sixty days of sobriety. Tr. 391.

The ALJ's assertion that Plaintiff improved with medication and that there was "objective improvement" following her inpatient treatment is not supported by substantial evidence, therefore this reason falls shorts of the lessor standard of

specific and legitimate and is a not a legally sufficient reason to reject Dr. Kouzes' opinion.

### 2.    Kari Heistand, M.D., and Mona Morgan, LMHC

On September 26, 2012, Dr. Heistand and Ms. Morgan completed a Mental Residual Functional Capacity Assessment form together.  Tr. 360-362.  On the form, the two providers opined that Plaintiff was severely limited[7] in the abilities to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods; marked limited[8] in the abilities to understand and remember detailed instructions, to carry out detailed instructions, to work in coordination with or proximity to others without being distracted by them, to accept instructions and respond approximately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and moderately[9] limited in the abilities to interact appropriately with the general public, to ask simple questions or request assistance, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others.  *Id*.  The ALJ gave

---

[7]"Severely Limited – Inability to perform one or more basic work-related activities."  Tr. 360.

[8]"Markedly Limited – Very significant interference with basic work-related activities, i.e., unable to perform the described mental activity for more than 33% of the work day."  Tr. 360.

[9]"Moderately Limited – Significant interference with basic work-related activities, i.e., unable to perform the described mental activity for at least 20% of the work day up to 33% of the work day."  Tr. 360.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 14

1  this opinion "limited persuasive value" because it contained no discussion of
2  objective evidence or observations as a basis for the opined limitations.  Tr. 29.

3       This reason is improper.  It is true that "an ALJ may discredit treating
4  physicians' opinions that are conclusory, brief, and unsupported by the record as a
5  whole or by objective medical findings." *Batson*, 359 F.3d at 1195.  However, an
6  ALJ may not discredit a treating physician's opinion, even a conclusory one, if it is
7  supported by the record and the opining physician's treatment notes. *See Burrell*,
8  775 F.3d at 1140.  Dr. Heistand saw Plaintiff the same day as her opinion and
9  noted mild psychomotor agitation, daily auditory and visual hallucinations,
10  depressed mood, and a somewhat labile affect.  Tr. 539.  Additionally, the
11  treatment notes from Central Washington Comprehensive Mental Health support
12  the opined limitations:  "She seems to even sometimes revert back to what is
13  almost baby talk," Tr. 426; stating she would hurt her significant other before he
14  hurt her, Tr. 312,  she "was overly emotional, tearful, comical, laughing and
15  serious,"  Tr. 630; "Her anxiety seems bad and she is struggling with it," Tr. 677;
16  she "was up and down emotionally, tears, raised angry voice," Tr. 678; and "At
17  times she almost refers back to baby talk." Tr. 681.

18       Considering the case is already being remanded, the ALJ is instructed to also
19  reconsider the opinion of Dr. Heistand and Ms. Morgan on remand.

20       **3.    Mona Morgan, LMHC, and Jessica Web, ARNP**

21       In August 2013, Plaintiff's providers, Ms. Morgan and Ms. Webb completed
22  a Mental Residual Functional Capacity Assessment, like the one completed by Dr.
23  Heistand and Ms. Morgan the prior September.  Tr. 690-692.  In their opinion, they
24  gave Plaintiff three severe limitations, five marked limitations, and seven moderate
25  limitations.  *Id*.  Additionally, they opined that Plaintiff would be off-task over
26  30% of the time during a 40-hour work schedule and Plaintiff would likely miss
27  four or more days per month if attempting to work a 40-hour work schedule.  Tr.
28  962.  The ALJ gave "limited weight" to this opinion because (1) the record did not

ORDER GRANTING PLAINTIFF'S MOTION . . . - 15

support the opined level of limitation, (2) it did not include a discussion of any objective medical evidence, and (3) it did not discuss Plaintiff's continued substance use and how it may exacerbate her symptoms.  Tr. 28.

Unlike Dr. Kouzes and Dr. Heistand, Ms. Morgan and Ms. Web are not acceptable medical sources; instead, they are considered "other sources." *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).  Generally, the ALJ should give more weight to the opinion of an acceptable medial source than to the opinion of an "other source," such as a therapist.  20 C.F.R. §§ 404.1513(d), 416.913(d).  An ALJ is required, however, to consider evidence from "other sources," 20 C.F.R. §§ 404.1513(d), 416.913(d); S.S.R. 06-03p, "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232.  An ALJ must give reasons that are germane to each "other source" to discount their opinions.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

While the Court agrees with Plaintiff that the third reason provided by the ALJ is an inaccurate representation of the record, the form completed by the two providers specifically requested that they disregard the effects of any current substance use, because of the lesser standard of a germane reasons, the ALJ did not error in his treatment of this opinion.  However, because the case is being remanded to readdress the opinions of Dr. Kouzes and Dr. Heistand, the ALJ is further instructed to address all of the medical source opinions in the file, including that of Ms. Morgan and Ms. Web.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused

by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to determine Plaintiff's credibility regarding her symptom reporting, and reconsider the weight provided to the medical source opinions throughout the record. Additionally, the ALJ is instructed to reconsider Plaintiff's impairments of asthma/COPD and left knee injury at step two. The ALJ will also need to supplement the record, reconsider the medical evidence, and, elicit testimony from an pulmonology expect regarding the severity of Plaintiff's breathing impairment and resulting functional limitations, a psychology expert regarding Plaintiff's psychological impairments and resulting functional limitations, and a vocational expert for any step four or five determinations.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 17

3.      Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED July 5, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 18